UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DeQUANDRE HUNT,

    Plaintiff,

v.

ASHELY BRAULT
and A. CHILDS,

    Defendants.
_____/

Case No. 19-11994

Stephanie Dawkins Davis
U.S. District Judge

## **ORDER OF PARTIAL DISMISSAL**

On July 3, 2019, Plaintiff DeQuandre Hunt, a state prisoner at the Alger Maximum Correctional Facility in Munising, Michigan, filed a *pro se* complaint under 42 U.S.C. § 1983. (ECF No. 1). The complaint arises from prison disciplinary proceedings that occurred in 2016 at the Saginaw Correctional Facility in Freeland, Michigan (SRF). At the time, defendant Ashely Brault was a psychiatrist at SRF, and defendant A. Childs was the Chief of the Mental Health Unit. Brault filed two misconduct reports about Hunt, and Childs supported Brault's assessment of Hunt's conduct. A prison hearing officer found Hunt not guilty of the misconduct charges, but Hunt's security classification was raised, and he was transferred to another prison. Hunt now sues Brault and Childs in their personal and official capacities for alleged violations of his state and federal rights. The Court has concluded for reasons set forth below that several of Hunt's claims

fail to state a plausible claim for relief. Accordingly, those claims will be dismissed.

## BACKGROUND

The complaint and exhibits indicate that, on December 2, 2016, Brault wrote two prison misconduct reports about Hunt. In one misconduct report, she charged Hunt with sexual misconduct because on the previous day, Hunt allegedly used degrading words of a sexual nature. (ECF No. 1, PageID.6). In the other misconduct report, Brault charged Hunt with threatening behavior because on December 2, 2016, Hunt allegedly stared at her, spoke to her in a threatening tone, and faced her in an aggressive fighting stance. *See id*. at PageID.5.

Before a hearing was conducted on the misconduct charges, Childs provided the hearing officer with some background information about Hunt. Childs informed the hearing officer in a written memorandum that, on October 19, 2016, Hunt had made sexually inappropriate remarks to Brault during a mental health callout. Hunt allegedly asked Brault to consider being part of a polygamous relationship with him in the future. He also asked Brault about her relationships and sexual preferences. As a result of Hunt's comments, his treatment team determined that, in the future, Hunt would be seen by male staff members if he needed a mental health callout. According to Childs, Hunt refused to work with a male clinician on November 3, 2016, he did not request a subsequent callout, and

he continued to approach Brault in the hallways. Childs opined that Hunt's behavior had escalated and that the misconduct reports were necessary to stop Hunt's ongoing harassment. *See id*. at PageID.12. On December 13, 2016, a hearing officer held a hearing on the misconduct charges and found Hunt not guilty of both sexual misconduct and threatening behavior. *See id.* at PageID.13-14.

On July 3, 2019, Hunt filed his civil rights complaint. His statement of facts differs significantly from the allegations that Brault made in her misconduct reports and that Childs made in her memorandum to the hearing officer. Hunt alleges that months before October 2016, he saw the Parole Board and was told that he was scheduled for release on December 28, 2016, if he completed a program called "Thinking for a Change." In October 2016, he was transferred to SRF at a security level of 2 so that he could take the "Thinking for a Change" class. *Id*. at PageID.16.

Hunt further alleges that, on October 19, 2016, he was placed on a callout to speak with Brault and that, during his session with Brault, she began to disclose personal information about her relationship with her husband and about being on the brink of divorce due to infidelity. According to Hunt, Brault stated that Hunt's views made him polygamous. She then asked Hunt whether he found her sexually attractive, and when Hunt responded that he was on his way home and was committed to staying free, Brault dismissed him, and he left her office. *Id.*

Continuing, Hunt alleges that, on December 2, 2016, he was walking to his classroom when he noticed Brault and Clark having a discussion in the hallway. He said, "Good Morning," to them, but Brault snarled at him and Childs told him to go to his class. He went to class, but minutes later, several corrections officers came to his classroom, asked him to step outside the room, and then handcuffed him. He was placed in segregation, and after being found "not guilty" of the alleged misconduct, he was given a higher security classification and told that he could not finish his class. *Id*. at PageID.16-17.

Four days later, the warden allegedly informed Hunt that he (the warden) "had to roll with his staff" and that Hunt's transfer was pending. Within one week, Hunt was transferred to the Macomb Correctional Facility. He contends that he lost the jobs which he had secured for when he was released from prison and that he did not complete his "Thinking for a Change" class until February 28, 2017. *Id*. at PageID.17-18.

Hunt is now suing the defendants for alleged violations of his rights under the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Hunt claims that the defendants knowingly subjected him to personal abuse, deliberate indifference, atypical and significant hardships, and retaliation. Hunt also claims that the defendants violated a policy directive that prohibits employees of the Michigan Department of Corrections from falsifying documents.

4

*Id*. at PageID.18. He seeks a declaratory judgment that the defendants' acts and omissions violated his constitutional rights; compensatory and punitive damages; and an order discharging Brault and Childs from their jobs. *Id*. at Page ID.19.

## LEGAL FRAMEWORK

A federal district court must screen a prisoner's *pro se* complaint and dismiss the complaint or any portion of the complaint that is frivolous, malicious, fails to state a claim for which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. A complaint is frivolous if it lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

To prevail on a claim under § 1983, a plaintiff must prove "(1) that he or she was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of law." *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014) (end citations omitted). Although a complaint "does not need detailed factual allegations," the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnote and citations omitted). In other words, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

## DISCUSSION

### A. Abuse and Deliberate Indifference

As noted above, Hunt alleges that the defendants violated his rights under the Eighth Amendment and subjected him to abuse and deliberate indifference. (ECF No. 1, PageID.18). It is well "settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Helling v. McKinney,* 509 U.S. 25, 31 (1993)). The Eighth Amendment requires prison officials to provide humane conditions of confinement, *id.*, but a prison official violates the Eighth Amendment only when (1) the deprivation alleged is sufficiently serious and (2) the prison official has a sufficiently culpable state of mind. *Id.* at 834. "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety . . . ." *Id.*

Hunt has not alleged that the defendants physically abused him, and verbal abuse generally "do[es] not constitute the type of infliction of pain that the Eighth Amendment prohibits." *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th

Cir. 2004). Thus, to the extent Hunt is claiming that the defendants violated his rights under the Eighth Amendment by verbally abusing him, his allegation is "insufficient to support a section 1983 claim for relief." *Wingo v. Tennessee Dep't of Corr.*, 499 Fed. Appx. 453, 455 (6th Cir. 2012) (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)).

B. <u>Atypical and Significant Hardships</u>

Hunt alleges next that the defendants subjected him to atypical and significant hardships. (ECF No. 1, PageID.18). The court understands this allegation to assert a violation of Hunt's right to due process.

State action taken for a punitive reason, however, does not necessarily encroach on a liberty interest under the Due Process Clause. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Thus, the Supreme Court has "reject[ed] . . . the notion that *any* grievous loss visited upon a person by the State is sufficient to invoke the procedural protections of the Due Process Clause." *Meachum v. Fano*, 427 U.S. 215, 224 (1976) (emphasis in original). Liberty interests protected by the Due Process Clause generally are "limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Conner*, 515 U.S. at 484 (internal citations omitted).

Hunt's placement in segregation for a few days did not amount to an atypical and significant hardship in relation to the ordinary incidents or prison life. *See Conner*, 515 U.S. at 486 (holding that the prisoner's placement in segregated confinement for thirty days was not a major disruption in the prisoner's environment and not "the type of atypical, significant deprivation in which a State might conceivably create a liberty interest").

Hunt's transfer to another prison, his increased security classification, and the delayed completion of his class also did not deprive him of a protected liberty interest or amount to atypical and significant hardships. *See Fano*, 427 U.S. at 224 (stating that, the Constitution does not "guarantee that the convicted prisoner will be placed in any particular prison," even if the degree of confinement in one prison is quite different from that in another prison, and that a conviction sufficiently extinguishes a prisoner's "liberty interest to empower the State to confine him in any of its prisons"); *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976) (concluding that prisoners have no constitutional entitlement to a particular classification or eligibility for rehabilitative programs sufficient to invoke due process); *see also Guile v. Ball*, 521 Fed. Appx. 542, 544 (6th Cir. 2013) (stating that "[a]lthough the indefinite confinement of a prisoner to administrative segregation or the transfer to a type of maximum security facility with virtually no sensory or environmental stimuli can create a liberty interest due to its 'atypical, significant deprivation,' a

simple transfer, issuance of a major misconduct ticket, and a higher security classification does not trigger a liberty interest") (internal citations omitted).

To the extent Hunt is alleging that the misconduct reports led to the delay in completing his class and being released on parole, that claim also fails, because "[t]here is no 'constitutional or inherent right' to parole." *Vitek v. Jones*, 445 U.S. 480, 488 (1980) (citing *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7 (1979)). "Michigan's parole system, [moreover], creates no legitimate claim of entitlement to parole, and thus no liberty interest in parole." *Wershe v. Combs*, 763 F.3d 500, 506 (6th Cir. 2014) (quotation marks and end citation omitted). "Without a demonstrated liberty interest or an atypical, significant deprivation, [Hunt's] due process claim fails." *Guile*, 521 Fed. Appx. at 544.

C.  Violation of State Law

Hunt asserts that the defendants violated a policy directive which prohibits employees of the Michigan Department of Corrections from falsifying documents. This allegation fails to state a plausible claim for relief because

> Section 1983 authorizes the courts to redress violations of "rights, privileges, or immunities secured by the Constitution and [federal] laws" that occur under color of state law. The statute is thus limited to deprivations of *federal* statutory and constitutional rights. It does not cover official conduct that allegedly violates *state* law. *See Baker v. McCollan*, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979) (dealing with state tort law). Section 1983 also does not cover state

9

> constitutional violations that are not also federal
> constitutional deprivations.

*Huron Valley Hosp., Inc. v. City of Pontiac*, 887 F.2d 710, 714 (6th Cir. 1989) (alteration and emphases in original). Therefore, to the extent Hunt invokes prison policy, he fails to allege a federal constitutional claim. Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007). Courts have routinely recognized that prisoners do not have any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250–51 (1983); *Laney*, 501 F.3d at 581 n.2; *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir. 1994); *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). Accordingly, the Court concludes that Hunt's claim about the alleged violation of state law and falsification of documents fails to state a plausible claim for relief under federal law. *See Nathaniel Hill v. Michigan Dep't of Corr.*, 2021 WL 1572829, at *4 (W.D. Mich. Apr. 22, 2021) ("Plaintiff's allegation that Defendants violated prison policy … fails to raise a cognizable federal due process claim.").

While it does not appear from the face of the complaint that Hunt brings a claim for any violation of state law based on the MDOC policy directive, to the extent he may attempt to do so, any such claim fails as a matter of law. As

explained in *Jordan v. Dep't of Corr.*, 2010 WL 935686, at *2 (Mich. Ct. App. Mar. 16, 2010), "[i]n order for an agency regulation, statement, standard, policy, ruling, or instruction of general application to have the force of law, it must fall under the definition of a properly promulgated rule." *Id*. (quoting *Danse Corp. v. Madison Hts.*, 466 Mich. 175, 181 (2002). As observed in *Jordan*, MDOC policy directives "do not have the force of law and no sanction attaches to [their] violation." *Id*. (citing *Boyd v. Civil Service Comm.*, 220 Mich. App. 226, 236 (1996)). Accordingly any state law claim based on a purported violation of MDOC policy fails as a matter of law.

## CONCLUSION AND ORDER

Hunt's allegations that the defendants verbally abused him, were deliberately indifferent to his needs, subjected him to atypical and significant hardship, and violated state law by falsifying documents fail to state a plausible claim for which relief may be granted.

**WHEREFORE, IT IS ORDERED** that those claims are summarily **DISMISSED** with prejudice under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. Plaintiff's sole remaining claim is for First Amendment retaliation.

**IT IS SO ORDERED**.

Dated: May 13, 2021　　　　　　　　s/Stephanie Dawkins Davis
　　　　　　　　　　　　　　　　　　Stephanie Dawkins Davis
　　　　　　　　　　　　　　　　　　United States District Judge