UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEQUANDRE HUNT,

    Plaintiff,

v.

ASHLEY BRAULT
and A. CHILDS,

    Defendants.
_____/

Case No. 19-11994
Honorable Linda V. Parker

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 21)

**I.**    **Introduction**

On July 3, 2019, Plaintiff DeQuandre Hunt, a state prisoner at the Bellamy Creek Correctional Facility ("IBC") in Iona, Michigan, filed a *pro se* Complaint under 42 U.S.C. § 1983. (ECF No. 1). On January 31, 2020, the case was reassigned from Judge Stephen Murphy to Judge Stephanie Dawkins-Davis pursuant to Administrative Order 20-AO-010. On May 13, 2021, Judge Stephanie Dawkins-Davis dismissed all but Plaintiff's First Amendment retaliation claim against Defendants Ashley Brault and Angel (Childs) Girard (collectively "Defendants"), who are both Michigan Department of Corrections ("MDOC") employees. (ECF No. 9).

On February 22, 2022, Defendants filed a motion for summary judgment arguing that Plaintiff failed to exhaust his First Amendment claim. (ECF No. 21.) Plaintiff filed a response to the motion. (ECF No. 31.) The Court is also in receipt of a letter from Plaintiff, dated August 21, 2022. (ECF No. 33.) For the reasons that follow, the Court is granting Defendants' motion.

## II.   Statement of Facts

Plaintiff's First Amendment retaliation claim arises out of two allegedly retaliatory misconduct tickets issued by Defendants on December 2, 2016, while Plaintiff was incarcerated at MDOC's Saginaw Correctional Facility (SRF) in Freeland, Michigan. (ECF No. 1 at Pg ID 16-18.) At the time, Defendant Brault was a psychiatrist at SRF, and Defendant Childs was the Chief of the Mental Health Unit. (*Id*. at Pg ID 16.)

In the first misconduct report, Defendant Brault charged Plaintiff with sexual misconduct because Plaintiff allegedly used degrading words which were sexual in nature towards her on December 1, 2016. (*Id.* Pg ID 6.) In the second misconduct report, Defendant Brault charged Plaintiff with threatening behavior because he allegedly spoke to her in a threatening tone and faced her in an aggressive manner. (*Id*. Pg ID 5.) In support of Defendant Brault's misconduct tickets, Defendant Childs provided the hearing officer with a written memorandum outlining Plaintiff's alleged previously inappropriate behavior towards Defendant Brault.

(*Id*. at Pg ID 12.) Plaintiff maintains that the information contained in the memorandum is false. (ECF No. 1 at Pg ID 17.)

At the misconduct hearing, the prison hearing officer found Plaintiff not guilty of the misconduct charges. (*Id.* At Pg ID 17.) Nonetheless, Plaintiff's security classification was thereafter raised, he was placed in segregation, and he was ultimately transferred to another facility. (*Id*. at Pg ID 18.) Plaintiff argues that these misconduct tickets and the memorandum in support of them were in retaliation for Plaintiff making verbal and written grievances to the Warden about Defendants' alleged harassment. (ECF No. 31 at Pg ID 184.)

### III. Standard of Review

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

Finally, "failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). To survive this defense, a prisoner ". . . must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *5 (E.D. Mich. Oct. 29, 2014), *report & recommendation adopted in*, 2015 WL 1245969 (E.D. Mich. Mar. 18, 2015).

4

**IV. Analysis**

The PLRA provides that a prisoner may not bring a federal lawsuit related to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion requires adherence to the institution's grievance policies, including any time limitations. *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). The Sixth Circuit "requires an inmate to make 'affirmative efforts to comply with the administrative procedures,' and analyzes whether those 'efforts to exhaust were sufficient under the circumstances.'" *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (quoting *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 224 (6th Cir. 2011)). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Dykes v. Fuller*, No. 19-2243, 2020 WL 6257023, at *1 (6th Cir. July 10, 2020) (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

In their motion for summary judgment, Defendants maintain that Plaintiff's First Amendment retaliation claim must be dismissed because he failed to exhaust his administrative remedies prior to filing suit as required under the PLRA.[1] (ECF

---

[1] Defendants raise arguments in support of their exhaustion argument: first that Plaintiff was required to exhaust his retaliation claim through the misconduct

No. 21 at Pg ID 100.)  Plaintiff argues in response that he did in fact exhaust all administrative remedies *available* to him and thus should be excused from having to complete the formal grievance process.  (ECF No. 31 at Pg ID 182.)  The Court ultimately finds that Plaintiff's claim is not properly exhausted.

Plaintiff's First Amendment retaliation claim is premised on Defendants' filing of allegedly false misconduct reports against him.  The Sixth Circuit in *Reynolds-Bey v. Harris* stated, ". . . distinct from the outcomes of misconduct *hearings* [which are not grievable]*,* the filing of retaliatory misconduct *reports* is grievable under MDOC [grievance procedures]."  428 F. App'x 493, 501 (6th Cir. 2011) (emphasis in original).  As such, Plaintiff was required to follow the MDOC grievance process prior to filing the present lawsuit asserting his retaliation claim.

In order to exhaust MDOC's grievance process, the prisoner must follow three steps.  MDOC PD 03.02.130 (C) (eff. 03/18/2019).  Prior to submitting a written grievance, a prisoner must ". . . attempt to resolve the issue with the staff

---

hearing process, and second, he failed to otherwise follow the grievance process. (ECF No. 21 at Pg ID 100, 101.)  The Court does not find merit in Defendants' first argument because Plaintiff was found not guilty of the misconduct charges and therefore was not required to raise the retaliation claim in the misconduct hearings.  *See Dykes v. Fuller*, No. 18-cv-11528, 2019 WL 6170868, at *2 (E.D. Mich. Aug. 7, 2019), *report and recommendation adopted in*, 2019 WL 4744433 (E.D. Mich. Sept. 30, 2019), *aff'd*, No. 19-2243, 2020 WL 6257023 (6th Cir. July 10, 2020).

member involved within two business days after becoming aware of the grievable issue." MDOC PD 03.02.130 (Q).  If unsuccessful, the grievant may file a Step 1 grievance within five business days. *Id*.  Within ten business days after receiving the Step I response, "a grievant may file a Step II grievance if s/he is dissatisfied with the response received."  MDOC PD 03.02.130 (DD).  Finally, within ten business days after receiving the Step II response, a grievant may file a Step III grievance if s/he is unsatisfied.  MDOC PD 03.02.130 (HH).

Defendants argue that Plaintiff failed to exhaust these requirements. Plaintiff does not dispute this but explains that he did not follow MDOC's grievance process because ". . . anything about a misconduct issue or where a misconduct is mentioned, the MDOC Grievance Coordinators deny the grievance as non-grievable" and as such, he was worried he would be placed on "modified access/grievance restriction" if he filed one.  (ECF No. 31 at Pg ID 182.)  Plaintiff therefore asserts that his "only available" remedy was making "written and verbal complaints to supervisory staff to try and resolve the issue," but he was "transferred in the midst of exhaustion."  (ECF No. 31 at Pg ID 182, 184.) Plaintiff's explanation does not excuse his failure to exhaust his administrative remedies.

The Supreme Court has held that the PLRA's exhaustion requirement is mandatory and not subject to "special circumstances" to be decided at the

discretion of the courts. *Ross v. Blake*, 578 U.S. 632, 641 (2016). Nevertheless, as the Supreme Court also has explained, under the PLRA, the administrative remedies must be "available." *Id.* at 639, 642. The Court has found three circumstances where an administrative procedure is unavailable: (1) it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use . . some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it" or (3) "when prison administrator's thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643. Plaintiff's explanation seems to encompass to some degree the first and third scenarios.

Nevertheless, Plaintiff fails to come forward with evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Moses v. Campbell*, No. 20-cv-13366, 2022 WL 2805145, at *4 (E.D. Mich. July 18, 2022) (quoting *Alexander v. Calzetta*, No. 16-cv-13293, 2018 WL 8345148, at *6 (E.D. Mich. Nov. 30, 2018), *report & recommendation adopted*, 2019 WL 1011106 (E.D. Mich. Mar. 4, 2019)). In other words, Plaintiff presents only his unsupported and "nonspecific allegations of fear and subjective feelings of futility" which "will not excuse a failure to exhaust administrative remedies." *Id.* (quotation marks and

citation omitted); *see also Russell v. Berkshire*, No. 1:19-cv-1014, 2020 WL 7327577, at *4 (W.D. Mich. June 18, 2020) (finding that the plaintiff failed to show grievance process was unavailable when she alleged only that prison officials had a "custom" of declining to exercise their authority and that she "observed grievances being rejected," but she failed to articulate details or specifics regarding these allegations, or present evidence in support), *report & recommendation adopted*, 2020 WL 6498910 (W.D. Mich. Nov. 5, 2020); *Stevens v. Potila*, No. 14-cv-10863, 2015 WL 1245889, at *3 (E.D. Mich. Mar. 18, 2015) (finding no merit to the plaintiff's argument that he did not use the grievance system because he was fearful of retaliation because "[a] prisoner's subjective belief that the grievance process would be ineffective cannot excuse failure to exhaust the prison grievance procedure prior to filing suit") (citing *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011)).

Plaintiff has not followed MDOC's prison grievance procedures with respect to his retaliation claim, and vaguely making superiors aware is not a substitute for exhaustion. *Tesley v. Martin*, No. 17-cv-11249, 2017 WL 9477656, at *6 (E.D. Mich. Nov. 15, 2017), *report and recommendation adopted*, 2018 WL 618738 (E.D. Mich. Jan. 30, 2018), *aff'd in part, vacated in part, remanded*, No. 18-1158, 2019 WL 11003420 (6th Cir. Apr. 1, 2019).

Lastly, Plaintiff's claim that he was transferred in the midst of exhaustion also does not justify his failure to follow MDOC's grievance procedures. Plaintiff fails to explain—much less present evidence—showing how his transfer interfered with the grievance process. Moreover, while MDOC's Policy Directive specifically provides that a grievance will be rejected if untimely, it further states unless "…there is a valid reason for the delay; e.g., transfer." (ECF No. 21 at Pg ID 107.) There is nothing in the policy directive nor relevant caselaw to suggest administrative remedies may be surpassed altogether because of a transfer.

In short, Defendants establish that administrative remedies were available to Plaintiff, which he did not follow, and Plaintiff fails to show that those remedies were truly unavailable to him. As such, Plaintiff is precluded from pursuing judicial review of his retaliation claim pursuant to 42 U.S.C. § 1997e(a).

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment (ECF No. 21) is **GRANTED**.

**IT IS SO ORDERED.**

                                                  s/ Linda V. Parker
                                                  LINDA V. PARKER
                                                  U.S. DISTRICT JUDGE

Dated: September 28, 2022

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, September 28, 2022, by electronic and/or U.S. First Class mail.

                                            s/Aaron Flanigan
                                            Case Manager